IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01871-CBS

CORINNE BROGREN,

       Plaintiff,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

       Defendant.

_____

**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

_____

Magistrate Judge Craig B. Shaffer

      This matter comes before the court on Defendant United States Department of Veterans Affairs's Motion to Dismiss the Second Amended Complaint for Lack of Subject-Matter Jurisdiction and For Failure to State a Claim (doc. #36) filed on February 29, 2016.  Plaintiff Corinne Brogren filed her Opposition to Defendant's Motion to Dismiss the Second Amended Complaint (doc. #39) on March 21, 2016, which was followed by Defendant's Reply in Support of Motion to Dismiss (doc. #43) on April 20, 2016.

      The parties consented (doc. #19) to the magistrate judge's jurisdiction to "conduct all proceedings in this civil action, including trial, and to order the entry of a final judgment," pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2.  Accordingly, the case was referred to this court on November 24, 2015.  *See* doc. #20.  The court has carefully considered the parties' briefs and attached exhibits, the entire case file, and the applicable law

1

and is sufficiently advised in the premises.  For the following reasons, the court dismisses the Second Amended Complaint.

## PROCEDURAL BACKGROUND

Ms. Brogren's Second Amended Complaint (doc. #35) is the operative pleading in this case and was filed on February 2, 2016.  The Second Amended Complaint generally alleges that during the relevant time period, Ms. Brogren was employed at a facility branch of the Department of Veterans Affairs as a Finance and Logistics Quality Assurance Officer (GS-14/10).  *See* Second Amended Complaint at ¶¶ 1 and 2.  Starting in April 2010, Plaintiff's immediate supervisor was Lavonne Liversage.  *Id.* at ¶ 9.  In June 2011, Ms. Brogren filed an EEO complaint accusing Ms. Liversage of age discrimination.  *Id.* at ¶ 10.  The Second Amended Complaint alleges that a mediation held on August 12, 2011 "confirmed that there had been harassment from Liversage toward the Plaintiff during the previous 13 months."  *Id.* at ¶¶ 11, 12.

In September 2011, a vacancy arose in Ms. Brogren's office, but Ms. Liversage "told the Plaintiff that she was not going to fill the auditor vacancy in the Plaintiff's office," *id.* at ¶¶ 13-15, notwithstanding the fact that in February 2012 the Veterans Health Administrative Central Office determined that Plaintiff's office was understaffed and "was not 'right sized.'"  *Id.* at ¶¶ 18 and 19.  Brogren alleges that "Liversage's refusal to fill [the] vacant position was detrimental to the Plaintiff's program and her working conditions."  *Id.* at ¶ 16.  According to Ms. Brogren, "Liversage had no valid reason to deny Plaintiff's request to fill the vacant auditor position" and deliberately refused to fill the position with the intent "to hinder the Plaintiff's ability to successfully do her job."  *Id.* at ¶¶ 22 and 23.

The Second Amended Complaint further alleges that "Liversage's refusal to fill said position was an act of retaliation against Plaintiff for engaging in EEO activity against Liversage."  *Id.* at ¶ 24.  Plaintiff also asserts that Ms. Liversage engaged in retaliatory action when she refused Ms. Brogren's request for administrative leave due to inclement weather on February 3, 2012 (*id* at ¶¶ 25-30), when Ms. Liversage did not support "Plaintiff's working on an automation workgroup" in or around November 2012 and "hinder[ed] Plaintiff's career progression" (*id.* at ¶¶ 31-36), when on March 12, 2013, Ms. Liversage "failed to provide relief to the Plaintiff in the form of additional staff support" (*id.* at ¶¶ 36-53), when on July 25, 2013, Ms. Liversage gave Ms. Brogren a mid-year performance review that "provided an unfair and inaccurate representation of the Plaintiff's job performance" (*id.* at ¶¶ 54-68), and when in and after July 2013, Ms. Liversage declined to grant Ms. Brogren's request for additional staff support (*id.* at ¶¶ 69-77).

The Second Amended Complaint alleges that Ms. Liversage issued Plaintiff a written letter of counseling on August 2, 2013, based upon Ms. Brogren's "alleged excessive sick leave usages."  According to Ms. Brogren, the written counseling letter was simply a pretext "to justify giving the Plaintiff a poor rating," and that contrary to her prior ratings of "outstanding" and "highly satisfactory," Ms. Liversage routinely gave Plaintiff "lower ratings of 'fully satisfactory.'"  *Id.* at ¶¶ 79-84.

According to Ms. Brogren, "[f]rom July 2010 to November 2013, [Ms.] Liversage continually bullied the Plaintiff" and isolated her from other staff members.  Ms. Brogren contends that Ms. Liversage removed her from the Executive Leadership Committee and the Oversight Committee "so that the Plaintiff could not interact with top management," as a means

"to hinder the Plaintiff's career," and "as retaliation for the Plaintiff's engaging in EEO activity against [Ms.] Liversage."  *Id.* at ¶¶ 90-99.  More generally, the Second Amended Complaint asserts that Ms. Liversage was "consistently antagonistic toward the Plaintiff" and occasionally "would deliberately withhold" information or emails from the Plaintiff that pertained to the Plaintiff's program, which "significantly and negatively altered the Plaintiff's working conditions" and "negatively affected the Plaintiff's ability to successfully do her job."  *Id.* at ¶¶ 100-105.

The Second Amended Complaint alleges that on August 1, 2013, Ms. Brogren initiated an EEO complaint with the Office of Resolution Management.  *Id.* at ¶ 106.  That complaint "was investigated from September 23, 2014 to November 21, 2014," and a "report of investigation was released to Defendant . . . on or about January 14, 2015."  *Id.* at ¶¶ 115 and 116.  Eliot VanderStek became Ms. Brogren's supervisor in November 2013.  *Id.* at ¶ 107.  VanderStek allegedly continued to make personnel decisions that left Ms. Brogen's program short-staffed and Plaintiff working longer hours.  According to Ms. Brogren, Mr. VanderStek "did not show any interest in working with Plaintiff and her program office."  *Id.* at ¶ 112.  Plaintiff alleges that on January 26, 2015, Mr. VanderStek rated her "fully satisfactory" on her performance evaluation for FY2014, even though Ms. Brogren believed she "should have received an exceptional rating because of her work in standardizing the FQAM audit package, expanding the automated audit process of the monthly reconciliation program, and reviewing and automating the RSD reports used by VHACO and field financial employees."  *Id.* at ¶¶ 117-119.  "Because she received a fully satisfactory rating," Plaintiff contends that she is unable to qualify for a GS-15 position.  *Id.* at ¶ 120.

Plaintiff's only claim for relief alleges that she was subjected to a hostile work environment and retaliation "in violation of the Age Discrimination in Employment Act of 1967" ("ADEA") based upon Defendant's denial of Ms. Brogren's necessary staffing requests, her removal from committees, her "poor ratings without valid reasons," Defendant's "deliberate actions to hinder the Plaintiff's career and her ability to successfully do her job," and the Defendant's issuance of "a fully successful performance rating for [Ms. Brogren's] FY2014 Performance Evaluation." *Id.* at ¶ 124. Ms. Brogren also contends that these retaliatory actions occurred after she "engaged in protected activity by filing a formal EEO complaint" and while she "continued to engage in protected EEO activity until January 2015 by participating in the investigative process of her EEO complaint." *Id.* at ¶¶ 126 and 127.

Defendant has moved to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing in summary that:

> The allegations regarding Ms. Liversage's supervision fail to state a claim because they do not allege material adverse actions (they are no more than Plaintiff's annoyance with her supervisor's decisions) and do not plausibly allege but-for causation between the protected activity and materially adverse actions.

*See* Defendant's Motion to Dismiss, at 1.[1]

Ms. Brogren argues in response that "the Court should reject Defendant's arguments in its motion . . . because Plaintiff has set forth a claim upon which relief can be granted." *See*

---

[1] Defendant also challenged this court's subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) on the assumption that Ms. Brogren was bringing a claim based in part on a hostile work environment as to Mr. VanderStek.  Defendant argued that Plaintiff had failed to exhaust her administrative remedies as to such a claim.  *Cf. Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1318 (10th Cir. 2005) (holding that exhaustion is a jurisdiction prerequisite to filing a lawsuit under the ADEA).  Plaintiff's counsel clarified that his client is not bringing a retaliatory hostile work environment claim against Mr. VanderStek.  *See* Plaintiff's Opposition to Defendant's Motion to Dismiss, at 1-2.  With that representation, Defendant has withdrawn its Rule 12(b)(1) motion.  *See* Defendant's Reply at 1.  This court is left to decide whether Ms. Brogren's Second Amended Complaint states a cognizable claim for relief.

Plaintiff's Opposition to Defendant's Motion to Dismiss, at 2.  Moreover, Plaintiff's counsel reasons that

> to dismiss the complaint at this early stage, without the benefit of any discovery on Ms. Brogren's allegations, would deprive her of the opportunity to prove [this] case.  In sum, it is in the interest of justice, and to assist the Court with a more developed record, this Court should allow . . . Ms. Brogren the opportunity to take discovery before an ultimate decision on the merits.[2]

*Id.* at 3.

## ANALYSIS

A.    *Standard of Review*

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, the court's analysis is two-fold.

> First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is those allegations that are legal conclusions, bare assertions, or merely conclusory. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  If the allegations

---

[2] *But see Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014) (noting that dismissal for failure to plead a viable cause of action is a decision on the merits, quoting *Hagans v. Lavine*, 415 U.S. 528, 542 (1974) ("It is well settled that the failure to state a proper cause of action calls for a judgment on the merits").  *Cf. State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 518 n.8 (10th Cir. 1994) ("A ruling that a party has failed to state a claim on which relief may be granted is a decision on the merits with full res judicata effect.").

> state a plausible claim for relief, such claim survives the motion to dismiss.
>
> Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.

*Wood v. Wells Fargo Bank, N.A.*, No. 13-cv-01731-CMA-KMT, 2013 WL 5763101, at *2 (D. Colo. Oct. 23, 2013) (internal citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1190-93 (10th Cir. 2012) (post-*Twombly* and *Iqbal*, the plaintiff "is required to set forth plausible claims" and may not rely on "the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*").

As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007),

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555 U.S. at 556).  A plaintiff must allege sufficient facts to elevate their claims above the level of mere speculation.  *Id.*  Stated differently, to survive Defendant's motion to dismiss, Ms. Brogren "must nudge [ ] [her] claims across the line from conceivable to plausible."  *Ridge at Red Hawk*, 493 F.3d at 1177 (internal quotation marks and citation omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently

alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).[3]

It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Faced with a challenge under Rule 12(b)(6), a plaintiff finds no refuge by arguing "that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Id.* at 685 (quoting *Twombly*, 550 U.S. at 559).

On Rule 12(b)(6) motions to dismiss discrimination claims,

> we are guided by the elements of the … claims. … While the [Rule] 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.

*Taylor v. Colo. Dep't of Health Care Policy & Fin.,* 811 F.3d 1230, 1233 (10th Cir. 2016) (quotation marks omitted, quoting *Khalik,* 671 F.3d at 1192). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), *abrogated in part on other grounds by Twombly*, 550 U.S. at 570 (Title VII claim not required "to plead facts establishing a prima facie case"); *Twombly*, 550 U.S. at 570 (must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face.").

---

[3] Plaintiff's discussion of the applicable Rule 12(b)(6) pleading standard inexplicably relies on judicial decisions that pre-date the Supreme Court's decision in *Twombly* and conspicuously omits any reference to Tenth Circuit precedents.

B.      *Plaintiff's Retaliation Claim: Materially Adverse Employment Actions*

The ADEA generally "prohibits an employer from 'fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1276-77 (10th Cir. 2005) (citing 29 U.S.C. § 623(a)(1)).  The elements for a retaliation claim under the ADEA are:  (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have considered the challenged employment action materially adverse; and (3) a causation connection exists between her protected activity and the materially adverse action.  *Brainard v. City of Topeka*, 597 F. App'x 974, 981 (10th Cir. 2015).  *Cf. MacKenzie*, 414 F.3d at 1278-79; *McElroy v. Am. Family Ins.*, 630 F. App'x 847, 850 (10th Cir. 2015).  Protected activity is defined as either participation in any manner in an ADEA investigation or proceeding, or opposition to practices unlawful under the ADEA.  29 U.S.C. § 623(d).

Defendant does not dispute that Plaintiff adequately alleged protected activity in pursuing her EEO complaints.  Defendant contends, to the contrary, that the Second Amended Complaint fails to allege facts that would plausibly demonstrate a materially adverse employment action or a causal connection between such action and Plaintiff's EEO activity.  I find that Defendant's position is supported by the weight of judicial precedent.

A "materially adverse" employment action is one that might well dissuade a reasonable worker from making or supporting a charge of discrimination.  *See Duvall v. Putnam City Sch. Dist.*, 530 F. App'x 804, 810 (10th Cir. 2013).  Although an "adverse employment action is not necessarily limited" to acts "such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits[,] ...

a plaintiff must [always] show that the alleged adverse action caused more than *de minimis* harm

to or a *de minimis* impact upon an employee's job opportunities or status." *EEOC v. C.R.*

*England, Inc*., 644 F.3d 1028, 1040 (10th Cir. 2011) (citations and internal quotation marks

omitted).

> We construe the phrase adverse employment action liberally and
> do not limit it to monetary losses in the form of wages or benefits.
> ... Acts that carry a significant risk of humiliation, damage to
> reputation, and a concomitant harm to future employment
> prospects may be considered adverse actions, although a mere
> inconvenience or an alteration of job responsibilities will not
> suffice.

*Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.,* 595 F.3d 1126, 1133 (10th Cir. 2010) (internal

citations and quotation marks omitted).

Here, the Second Amended Complaint is not a model of clarity regarding which events

Plaintiff alleges as materially adverse employment actions in themselves (known as a "discrete

acts" claim) and which she alleges only as parts of a hostile working environment, that as a

whole constitute a materially adverse employment action ("hostile working environment"

claim).[4]  The court will infer that Plaintiff claims discrete acts in the lowered performance ratings

she received from Ms. Liversage mid-year in 2013 and from Mr. VanderStek in January 2015.

Specifically, Ms. Brogren claims that the "fully satisfactory" performance reviews she

received from Ms. Liversage in July 2013 (Opposition at 5; Second Amended Complaint at

---

[4] Defendant argues that Plaintiff expressly limited the claim to hostile work environment, citing
Plaintiff's response to the motion to dismiss the original complaint.  The court believes that none
of Plaintiff's briefs have fully clarified whether Plaintiff intended to allege a discrete acts claim.
In an abundance of caution, the court will assume that Plaintiff pursues both theories.

¶¶ 54-68)[5] and from Mr. VanderStek (Second Amended Complaint at ¶ 117) were materially adverse and caused her unspecified "tangible harm" with respect to "the terms, conditions and privileges of his (sic) employment."  In support of its motion to dismiss, Defendant cites *Fox v. Nicholson*, 304 F. App'x 728, 733 (10th Cir. 2008).  In that case, the Tenth Circuit held that the plaintiff "could not establish a prima facie case on his claim that negative comments and lower scores on his performance review constituted retaliation because he was ultimately rated 'Fully Successful' on his performance review."  *See also Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (concluding that plaintiff who was given a performance review that was lower than previous reviews but remained in the satisfactory range had not presented evidence of an adverse action); *Brenna v. Salazar*, No. 08-cv-01696-LTB-CBS, 2010 WL 582357, at *12 (D. Colo. Feb. 17, 2010) ("Fully Successful" performance appraisal did not constitute a materially adverse employment action as a matter of law); *Rivera v. Levitt*, 88 F. Supp. 2d 1132, 1144 (D. Colo. 2000), *aff'd,* 44 F. App'x 934 (10th Cir. 2002) (summary judgment granted on plaintiff's retaliation claim to the extent it was based on performance rating lowered from "Exceeds Fully Satisfactory" to "Fully Satisfactory" because that did not constitute an adverse employment action cognizable under Title VII).

Plaintiff's counsel suggests that the Tenth Circuit's decision in *Fox* has no precedential value for purposes of the instant motion, because that case involved a motion for summary judgment and "Ms. Brogren has not had the opportunity to go through discovery to prove the lowered performance appraisal was a material adverse action that it (sic) affected the conditions

---

[5] Plaintiff alleges that on July 25, 2013 she received a mid-year performance review from Ms. Liversage that used inapplicable standards.  Second Amended Complaint at ¶¶ 54, 61.  In her Opposition, Plaintiff clarifies that she received the lower "fully satisfactory" performance rating on that mid-year review.  Plaintiff's Opposition at 5.  The court will assume that this is a reasonable inference to draw from Paragraphs 54, 61, and 84.

of her employment."[6]  I do not find that argument persuasive.  First, Ms. Brogren contends in

wholly conclusory fashion that the FY2014 performance review caused her "tangible harm."

Plaintiff would seem to be best positioned to articulate the nature and degree of that tangible

harm.  More to the point, Ms. Brogren's conclusory reference to unspecified harm will not

suffice to defeat the pending motion to dismiss in the absence of well-pled facts.  *Cf. Williams v.*

*McKee*, __ F. App'x __, 2016 WL 3995755, at *4 (10th Cir. Jul. 20, 2016) (in responding to a

motion to dismiss, a plaintiff cannot rely on "labels and conclusions, [or] a formulaic recitation

of the elements of a cause of action;" the court "disregard[s] conclusory statements and look[s]

only to whether the remaining, factual allegations plausibly suggest the defendant is liable.").

Plaintiff's attempt to distinguish *Fox* as a "summary judgment" case is equally

ineffectual.  In granting a motion to dismiss in *Johnson v. McDonald*, No. 5:14-ca-00368-OLG,

2014 WL 11531895, at *2 (W.D. Tex. Oct. 18, 2014), *aff'd,* 623 F. App'x 701 (5th Cir. 2015),

the district court noted that "a 'fully successful' rating is not considered a negative or 'low'

rating for purposes of a retaliation claim" and that the employee had "failed to present sufficient

facts to demonstrate that the 'fully successful' performance evaluation itself constitute[d] an

adverse employment actionable under Title VII."  *Cf. Turner v. U.S. Capital Police Board*, 983

F. Supp. 2d 98, 107 (D.D.C. 2013), *aff'd,* – F. App'x –, 2016 WL 3545545 (D.C. Cir. Jun. 03,

2016) (in granting the defendant employer's motion to dismiss, held that plaintiff's "meets

expectations" evaluation did not constitute a materially adverse action in the absence of any

plausibly alleged facts indicating that "that the rating caused plaintiff to miss out on a bonus,

salary increase, or promotion" or that the "performance evaluation hindered her professional

---

[6] Apart from attempting to distinguish *Fox,* this section of Plaintiff's response brief does not
affirmatively cite a single case, from the Tenth Circuit or elsewhere, that supports Ms. Brogren's
argument regarding her performance review as a materially adverse employment action.

opportunities"); *Powell v. Castaneda,* 390 F. Supp. 2d 1, 11 (D.D.C. 2005), *recon. denied on this issue and granted in part on other issues,* 247 F.R.D. 179 (D.D.C. 2007) (in dismissing plaintiff's retaliation claim, held that plaintiff's "fully satisfactory" performance rating was not an adverse employment action because it did not constitute a "change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits").

However, Plaintiff additionally alleges that her lower performance ratings are materially adverse employment actions because the "fully satisfactory" rating makes her "unable to qualify for a GS-15 position."  Second Amended Complaint at ¶ 120.  As noted above, an action that "caused more than *de minimis* harm to or a *de minimis* impact upon an employee's job opportunities" can be a materially adverse employment action.  *C.R. England,* 644 F.3d at 1040.  Citing no authority, Defendant argues that Plaintiff must allege a specific "GS-15 position that she wanted, or for which she was qualified, was available;" that she applied and was rejected for a specific GS-15 position because of the "fully satisfactory" performance evaluation;" or a specific VA rule to support her allegation.  Defendant's Motion to Dismiss at 4, 23.[7]

To plead the materially adverse action element, the Tenth Circuit does not require alleging a specific lost job opportunity.  "[H]arm ... to a plaintiff's future employment *prospects* can, when fully considering the unique factors relevant to the situation at hand, be regarded as an adverse employment action, even where plaintiff does not show the act precluded a particular employment *prospect.*"  *Hillig v. Rumsfeld,* 381 F.3d 1028, 1033 (10th Cir. 2004) (emphasis original; internal quotation marks omitted, citing *Aquilino v. Univ. of Kan.,* 268 F.3d 930, 934

---

[7] Plaintiff's response that she needs unspecified discovery to "demonstrate … how her lowered performance rating disqualified her from other positions" (Opposition at 7-8) is unsupported. The question is instead whether Plaintiff has pled facts that make the claim plausible.

(10th Cir. 2001); *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986–87 (10th Cir. 1996)).

Defendant does not argue that disqualification from a higher position is a *de minimis* impact.

Nor does Defendant point to any authority supporting the proposition that the Plaintiff must cite

a VA rule in order to state a plausible claim for relief.  Defendant apparently disputes that GS-15

positions required higher ratings at Plaintiff's job, but Defendant does not cite or submit any VA

rules standing for that proposition.  In short, the court must take Plaintiff's allegation that the

"fully satisfactory" rating disqualified her from GS-15 positions as true at this phase, and that

fact plausibly alleges a materially adverse employment action.

    As for the causation element, "a causal connection is established where the plaintiff

presents 'evidence of circumstances that justify an inference of retaliatory motive, such as

protected conduct closely followed by adverse action." *MacKenzie*, 414 F.3d at 1279 (citing

*Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)).

> Unless an adverse action is *very closely* connected in time to the protected activity, a plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation.  A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient.

*MacKenzie*, 414 F.3d at 1280 (emphasis original; quoting *Meiners v. Univ. of Kan.,* 359 F.3d

1222, 1231 (10th Cir. 2004)).  As noted, Plaintiff need not allege a *prima facie* case, but she

must allege sufficient facts to make causation plausible.  *See, e.g., Daviss v. Sch. Dist. No. 1*, No.

14-cv-00795-CMA-KMT, 2015 WL 5315615, at *4 (D. Colo. Aug. 24, 2015), *rec. adopted,*

2015 WL 5308004 (D. Colo. Sep. 11, 2015).  The court therefore addresses causation as to each

supervisor's lower ratings of Plaintiff's performance.

*Ms. Liversage's Rating of Plaintiff's Performance.*  Plaintiff argues that she adequately alleges causation in a close temporal connection between her participation in the August 2011 EEO mediation and Ms. Liversage's September 2011 denial of Plaintiff's staffing request. Opposition at 8.  Plaintiff argues that Ms. Liversage's conduct between September 2011 and at least July 2013 must be viewed as a pattern of behavior leading to the July 25, 2013 lower rating.

The Tenth Circuit has "explained that a 'pattern of retaliatory conduct [that] begins soon after the [protected activity] and only culminates later in actual discharge' may sometimes provide temporal proximity sufficient to infer retaliatory motive." *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1204 (10th Cir. 2008) (quoting *Marx v. Schnuck Mkts., Inc.,* 76 F.3d 324, 329 (10th Cir. 1996)).  Although a claim on the alleged conduct prior to 2013 would be time-barred (*see* doc. #1-1, Final Decision on July 18, 2014 EEO complaint), the employee can "us[e] the prior [time-barred] acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-15 (2002); *see also Chavez v. Adams Cty. Sch. Dist. No. 50,* No. 15-cv-00411-RBJ, 2016 WL 1258955, at *10 (D. Colo. Mar. 31, 2016) ("the Tenth Circuit has never intimated that, once a Charge is timely filed, courts are precluded from considering other retaliatory actions when deciding whether a specific action constitutes an actionable adverse employment action").

Here, the conduct that Plaintiff alleges Ms. Liversage engaged in to reduce Plaintiff's performance (and thereby, her performance rating) are: September 23, 2011, denial of staffing request; February 2012, denial of Plaintiff's follow up staffing request (Second Amended Complaint at ¶¶ 17-23); February 3, 2012, denial of administrative leave request due to inclement weather (*id.* at ¶¶ 25-29); November 2012, lack of support for Plaintiff to be part of an

automation workgroup (*id.* at ¶¶ 31-32); March 12, 2013, denial of follow up staffing request (*id.* at ¶ 36), and potentially, the "July 2013" denial of staffing request, although Plaintiff does not allege whether this occurred before or after the July 25, 2013 performance evaluation.[8]  Notably, there are several gaps of 3 months or more between the challenged conduct.

When long gaps occur between steps in the alleged pattern ultimately leading to an adverse employment action, the temporal proximity for causation breaks down:

> Mr. Hinds … suggest[s] that he began experiencing adverse employment actions from his protected activity when he received a negative review in September 2003, and that similar adverse employment actions continued through his eventual termination. ... The difficulty with such an argument in this case is that over three months elapsed between Mr. Hinds's June 2003 conversation with Mr. Joyce and e-mail to Mr. Forsee [the protected activity] and the September 2003 performance rating he cites as the first adverse action in his alleged pattern of retaliation. * * * Neither does Mr. Hinds present us with any special circumstances or any arguments concerning why this particular gap in time might be sufficient when it otherwise would not.

*Hinds*, 523 F.3d at 1204, n. 15.  Three months is "insufficient to establish a causal connection as a matter of law."  *Id.* at 1204 (internal quotation marks omitted).  *Cf. Goldstein v. Sprint United Mgmt. Co.,* 288 F. App'x 476, 482–83 (10th Cir. 2008) (rejecting "pattern" theory for temporal proximity because the instances that followed closely after protected activity were not connected to the ultimately adverse action).  Here, Plaintiff does not address the several gaps of well over 3 months between each step in Ms. Liversage's alleged pattern.  Giving Plaintiff the benefit of the doubt where she alleged only the month in question, between September 23, 2011 and February 3, 2012 approximately 4 ½ months passed; between February 2012 and November 2012, at least approximately 8 months passed; between November 2012 and March 2013, at least

---

[8] Plaintiff does not allege when Ms. Liversage removed her from committees or when Ms. Liversage's "routine" ratings of Plaintiff's job performance as "fully satisfactory" occurred.  The court does not regard those allegations for analyzing this element.

approximately 3 months passed. Plaintiff does not point to any additional facts to support causation. Therefore, the retaliation claim regarding Ms. Liversage's rating of Plaintiff's performance does not plausibly allege causation.

*Mr. VanderStek's Rating of Plaintiff's Performance.* Plaintiff alleges that on January 26, 2015, she received a "fully satisfactory" performance evaluation from Mr. VanderStek, rather than the "exceptional rating" she believes her work justified. Plaintiff contends she received this performance evaluation for FY2014 in retaliation for her July 18, 2014 EEO complaint and for "participating in" the subsequent investigative process.

Defendant argues that for purposes of causation, the temporal proximity must be between the *filing* of Plaintiff's July 18, 2014 EEO complaint and the January 26, 2015 performance rating. Defendant's Motion to Dismiss at 21. Defendant cites *Xia v. Salazar*, 503 F. App'x 577, 579-80 (10th Cir. 2012); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); and *Proctor v. United Parcel Service*, 502 F.3d 1200, 1209 (10th Cir. 2007). These cases require proximity between the last date(s) of the plaintiff's actual involvement in protected activity of which the person taking the adverse action was aware. *See, e.g., Clark County,* 532 U.S. at 273. This is not necessarily synonymous with the filing date. In response, Plaintiff cites *Kelley v. City of Albuquerque*, 542 F.3d 802 (10th Cir. 2008), arguing that as long as the EEO officer was investigating the complaint, the end of the investigation or the date of the report suffices for temporal proximity. This is not persuasive. *Kelley* analyzes whether a lawyer's representation of her client in an EEO proceeding was protected activity. *Id.* at 813-14. It does not address causation and therefore does not discuss the standard for temporal proximity. *Id.* at 817.

Here, beyond alleging that she filed the EEO complaint on July 18, 2014, Plaintiff does not allege when her last actual involvement occurred.  She alleges that she "continued to engage in protected EEO activity until January 2015 by participating in the investigative process," Second Amended Complaint at ¶ 127, but this is conclusory.  Plaintiff does not allege anything occurred in the EEO proceeding in January 2015 other than the final decision.  Paragraph 127 also contradicts Plaintiff's other allegations that the investigation was completed on November 21, 2014.  *Id.* at ¶ 115.  In addition, Plaintiff does not allege facts from which to infer that Mr. VanderStek was aware of the January 2015 report when he rated Plaintiff's performance.  Although the court will infer that the July 2014 EEO complaint was of import to Mr. VanderStek,[9] Plaintiff does not allege that Mr. VanderStek knew of the report when he gave the January 2015 evaluation.  This is an additional reason that Plaintiff's allegations do not plausibly suggest causation.  *See, e.g., Daviss,* 2015 WL 5315615, at *6 ("there is no evidence that Mr. Ramsey, Plaintiff's supervisor, was aware of the complaint when he terminated her employment").

In sum, Plaintiff fails to plausibly allege causation and therefore fails to state a claim for relief regarding the lower performance ratings given by Ms. Liversage and Mr. VanderStek.

C.      *Plaintiff's Retaliation Claim: Hostile Work Environment*

A reading of the allegations and claim in the Second Amended Complaint suggests that Plaintiff is asserting that she was also the victim of a retaliatory hostile work environment under the ADEA.  Defendant moves to dismiss this claim on the grounds that Ms. Brogren has not come forward with allegations that plausibly show a workplace permeated with discriminatory

---

[9] The final decision on the 2014 EEO complaint appears to regard conduct of only Ms. Liversage, not Mr. VanderStek.  Doc. #1-1.

intimidation or properly allege a "but-for" connection between Plaintiff's protected activity and the alleged retaliatory harassment.

To state an age-based hostile work environment claim under the ADEA, Ms. Brogren would have to "allege facts to show that [she was] subjected to a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Daviss*, 2015 WL 5315615, at *4. The hostile working environment must be "sufficiently severe as to qualify as a materially adverse action." *Lafont v. Colo. Athletic Club,* No. 13-cv-2345-MSK-CBS, 2015 WL 5031981, at *8 (D. Colo. Aug. 26, 2015) (citing *inter alia Bertsch v. Overstock*, 684 F.3d 1023, 1028-29 (10th Cir. 2012)). Specifically, Ms. Brogren's "factual allegations must be sufficient to show that [she] was subjected to [a] work environment that was both subjectively and objectively hostile[,] … that the environment altered the conditions of [her] employment," and "must support a contention that the 'harassment stemmed from age-related animus.'" *Daviss*, 2015 WL 5315615, at *4 (citing *Lebow v. Meredith Corp.*, 484 F. Supp. 2d 1202, 1218 (D. Kan. 2007)). *See also Hare v. Donahoe*, 608 F. App'x 627, 630-31 (10th Cir. 2015) (elements of hostile work environment claim); *Asebedo v. Kan. State. Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (same); *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (hostile work environment facts must support that the plaintiff "was targeted for harassment because of" her protected category). "The United States Supreme Court [h]as made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *McElroy v. Am. Family Ins. Co.*, 51 F. Supp. 3d 1093, 1111-12 (D. Utah 2014) (internal quotation marks and citation omitted), *aff'd, McElroy*, 630 F. App'x 847.

Thus, a hostile work environment claim "must be based on severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents." *Herrera*, 474 F.3d at 680. "One of the critical inquiries in a hostile environment claim must be the *environment*. Evidence of a general work atmosphere . . . – as well as evidence of specific hostility directed toward the plaintiff – is an important factor in evaluating the claim." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) (emphasis in original). In determining whether an actionable hostile work environment existed, the court must consider "all the circumstances," *Morgan*, 536 U.S. at 116, viewed through the perspective of a reasonable person in a plaintiff's position. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007). Among the factors appropriately considered are (1) whether the discriminatory conduct is frequent or severe, (2) whether it is physically threatening or humiliating, or a mere offensive utterance, and (3) whether it unreasonably interferes with an employee's work performance. *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1264 (10th Cir. 1998); *McElroy*, 51 F. Supp. 3d at 1111-12.

Nothing in the Second Amended Complaint plausibly suggests that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult based on age. In opposing the motion to dismiss, Plaintiff does not directly address whether her allegations meet this standard. She instead argues conclusorily that Ms. Liversage's alleged conduct as a whole shows "retaliatory harassment" that adversely changed the conditions of Plaintiff's current job and her future job prospects. Plaintiff's Opposition at 5. But taking the allegations as a whole does not overcome the lack of pervasive and severe age discrimination.

Plaintiff's alleges a hostile working environment in retaliation for complaining of age discrimination based on the following facts: Ms. Liversage denied Ms. Brogren's requests for staff support and a day of annual leave; gave her a letter of counseling regarding her use of sick leave; removed her from committees; did not support her work on an automation group; lowered her performance rating to "fully satisfactory" "without valid reasons" and used rating standards that the Plaintiff had not seen before; excluded her from staff meetings and withheld information; cancelled her November 2013 meeting with Plaintiff; did not speak to her regarding her trip to the ER due to stress; and bullied Plaintiff the entire time that Ms. Liversage was her supervisor.

Taking these allegations as true, these facts do not support a finding that "the workplace was permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment."  *See Herrera*, 474 F.3d at 680 (quotation and citation omitted).  She has not alleged how these actions were "so objectively offensive as to alter the conditions of [her] employment."  *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (internal quotation marks and citation omitted).  *See also Morris v. City of Colo. Springs,* 666 F.3d 654, 665-666 (10th Cir. 2012) (removal from heart surgery team, comments and physical contact); *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1324 (10th Cir. 1997) (heightened monitoring of attendance and letter of discipline regarding attendance problems); *Reinhardt,* 595 F.3d at 1133 ("an alteration of job responsibilities will not suffice," internal quotation marks omitted); *Somoza v. Univ. of Denver,* 513 F.3d 1206, 1217-18 (10th Cir. 2008) (plaintiffs' colleagues did not like them, were rude, failed to communicate, and "may be generally disagreeable people," but this did not rise to the level of a pervasively hostile work environment); *Kenfield v. Colo. Dep't of Pub. Health & Env.,* 557 F. App'x 728, 734 (10th Cir.

2014) (removing job duties from plaintiff was not a materially adverse action where it did not deter the plaintiff from pursuing another EEO complaint) *Paige v. Donovan*, No. 09-cv-01811-WJM-CBS, 2011 WL 5520291, at *3, 21 (D. Colo. Aug. 1, 2011), *rec. adopted*, 2011 WL 5520298 (D. Colo. Nov. 14, 2011), *aff'd*, 511 F. App'x 729 (10th Cir. 2013).  In short, Plaintiff has failed to allege the pervasive or severe discriminatory conduct required to state a hostile work environment claim.

Moreover, even if Plaintiff plausibly alleged the hostile work environment, Plaintiff fails to adequately allege causation for the claim.  The same standard of causation (temporal proximity or additional evidence) applies to retaliatory hostile work environment claims as to the discrete acts claim.  *See, e.g., Lafont,* 2015 WL 5031981, at *9.  Again, Plaintiff does not address the several long gaps (each of 3 months or more) between the challenged conduct for which Plaintiff alleges dates and Plaintiff's protected activity.  This is an additional reason that the hostile work environment claim fails and must be dismissed.

Finally, the court must determine whether it is appropriate to dismiss with prejudice or without prejudice to Plaintiff filing a motion to amend the Second Amended Complaint.  Plaintiff has not requested leave to amend a third time.  When the plaintiff does not formally seek leave to amend, the court need not provide for amendment upon dismissal.  *See, e.g., McLain v. Dussart*, No. 12-cv-02504-REB-MEH, 2015 WL 970155, at *1 (D. Colo. Mar. 2, 2015).  To obtain leave, Plaintiff would have to show that a third amendment would likely enable her to plausibly allege her claims.  *Id.*

Here, Defendant has argued the same Rule 12(b)(6) issues – lack of materially adverse employment action and causation – as to each of Plaintiff's three complaints in this case.  Docs.

#18, 30, 36.  In amending her original and first amended complaints, Plaintiff did not add or modify any allegations on those issues.  Docs. #28, #35.  Nor does Plaintiff's Opposition offer any glimpses of additional fact allegations the Plaintiff could add regarding these elements; rather, the brief erroneously argues that Plaintiff is entitled to discovery in order to allege her claims.  Again, particularly after *Twombly* and *Iqbal*, Plaintiff must first plead a plausible claim to obtain discovery, not the other way around.  Given all of these circumstances, the court has no reason to believe that a third amendment would enable Ms. Brogren to plausibly allege her claims.  Dismissal with prejudice is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Second Amended Complaint is dismissed with prejudice.   With no claims remaining, this civil action is dismissed in its entirety.  Judgment will enter accordingly.

DATED this 29th day of August, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge